NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUDITH NOONAN, at al.<br><br>Plaintiffs,<br><br>v.<br><br>COMCAST CORP.<br><br>Defendant. | Civil Action No. 3:16-cv-00458 (PGS)<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on Defendant's Renewed Motion to Compel Arbitration and Stay Litigation. (ECF No. 31).

**Factual & Procedural Background**

On December 8, 2015, Plaintiffs initiated this class action in Superior Court, Ocean County. On January 27, 2016, Defendant removed the matter to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332 *et seq*. (ECF No. 1, Notice of Removal). Plaintiffs allege: (1) declaratory relief; (2) violations of the Plain Language Act, N.J.S.A. §56:12-1 *et seq.*; (3) violations of the Consumer Fraud Act, N.J.S.A. § 56:8-1 *et seq.*; (4) breach of contract; (5) bad faith; and (6) prima facie tort, arising out of Comcast's allegedly arbitrary pricing,

deficient telephone, television, and computer services, deficient equipment, and abandoned equipment and advertising material. (ECF No. 1, Compl.).

Plaintiffs allege that Defendant arbitrarily priced its equipment and services, provided deficient services and equipment, left promotional literature on door knobs, abandoned equipment, used confusing contractual and promotional language, and provided deficient customer service. (*Id.* ¶¶ 17-24).

Defendant seeks to compel arbitration and stay litigation. Defendant contends that Plaintiffs are bound by an arbitration agreement in their Comcast Agreement for Residential Services (the "Subscriber Agreement"). Comcast provided copies of the Subscriber Agreement to Plaintiffs as an insert in a monthly billing statement and as part of a welcome kit when services were installed. (*See* Def.'s Br. 4; ECF No. 18).

For the purposes of this motion, the parties have submitted a Stipulation as to which versions of the Subscriber Agreements were in place at the time the Plaintiff received services.[1] (*See* Stip. 1-2; ECF No. 23-1). The stipulation is significant because the language of the current Subscriber Agreement available on Defendant's website differs from those in dispute. (*See* Pl.'s Br. 4-5; ECF No. 36). In particular, the Defendant revised Section 13 which contains the arbitration provision. (*See* Def.'s Br. at Exhibit "A"; ECF No. 18-2).

All three Subscriber Agreements in dispute have nearly identical arbitration provisions made up of 11 paragraphs a-k, are approximately thirty pages, over 3,000 words, and single spaced with no table of contents. (ECF No. 23-1) (*See* Def.'s Br. 6; Opp. Br. 10). The sections in the

---

[1] Plaintiffs' Subscriber Agreements are exhibits to the Supplemental Declaration of Claudia Salcedo. (ECF No. 23-1). Exhibit B is relevant to Plaintiffs Noonan and Stella Cristiano received in 2008, Exhibit C is relevant to Plaintiff Reinhard received in 2011, and Exhibit D is relevant to Plaintiff McGuinness received in 2012. (*See* Stip. ECF No. 23-1).

2

arbitration provision are as follows: a. Purpose; b. Definitions; c. Right to Opt Out; d. Initiation of Arbitration Proceeding/Selection of Arbitrator; e. Arbitration Procedures; f. Restrictions; g. Location of Arbitration; h. Payment of Arbitration Fees and Costs; i. Severability; j. Exclusions from Arbitration; k. Continuation. (*See* Exhibit "B"; ECF No. 23-1 at 44-47.) The 2008 agreement has no page numbers while the 2011 and 2012 agreements have page numbers and a separate notice on customer privacy. The following memorandum refers to all three agreements, starting with Ex. B, the 2008 Agreement, and citing to the corresponding page numbers for Exhibits C and D when the language used is identical.[2] Any minor language differences present in relevant sections of the disputed versions of the agreements are quoted accordingly.

On the first page of the 2008 Subscriber Agreement located three-quarters of the way down, in bold type (surrounded by other bold type) is the following language:

> **Note: This Agreement contains a binding arbitration provision in Section 13 that affects your rights under this Agreement with respect to all Services.**

(ECF 23-1 Ex. B at 28; Ex. C at 69; Ex. D at 102). Section 13 is roughly three-and-a-half pages, the first section listed is the "Purpose":

> **13. BINDING ARBITRATION**
> **a. Purpose.** If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution process described in this Agreement, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

(ECF 23-1 Ex. B 43-44). The language of this section in the 2011 agreement states as follows:

---

[2] The minor language differences in the agreements do not affect the general analysis, however, in the interest of comprehensiveness we include all different versions.

3

> **13. BINDING ARBITRATION**
> **a. Purpose**. If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

(ECF 23-1 Ex. C at 80). The language of this section in the 2012 agreements states:

> **13. BINDING ARBITRATION**
>
> **a. Purpose**. If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution with Comcast, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury. Proceeding in arbitration may result in limited discovery and may be subject to limited review by courts.

(ECF 23-1 Ex. D at 115.) Plaintiff points to the permissive language in the above section and contends that a customer unacquainted with the law would not deduce that the provision is a waiver of the right to access the court system (*See* Pl.'s Br. 2).

Plaintiff compares the 2008 agreement to the current version on Defendant's website with a strengthened introductory note, underlined and capitalized, in addition to bold:

> **Note: THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION IN SECTION 13 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT WITH RESPECT TO ALL SERVICE(S). These terms and conditions are subject to applicable tariffs and service guides.**

(*See* Def.'s Br. at Exhibit "A"; ECF No. 18-2). Section 13 has also been changed in Defendant's current version with more succinct and forceful language:

> **13. BINDING ARBITRATION**
> **a. Purpose.** Any Dispute involving you and Comcast shall be resolved through individual arbitration. In arbitration, there is no

4

> judge or jury and there is less discovery and appellate review than in court.

(*See* Def.'s Br. at Exhibit "A"; ECF No. 18-2).

The disputed agreements continue with the "**b. Definitions**" and "**c. Right to Opt Out**" paragraphs. Of note is what the Supreme Court has called a delegation clause, *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010), which arguably exists in the "**b. Definitions**" paragraph, stating that any dispute will go to an arbitrator and that "includes the validity, enforceability or scope of this Arbitration Provision." The Defendant notes that the "**c. Right to Opt Out**" paragraph is a clear signal that arbitration is binding. (*See* Def.'s Br. 4).

> **b. Definitions.** As used in this Arbitration Provision, the term "Dispute" means any dispute, claim or controversy between you and Comcast regarding any aspect of your relationship with Comcast that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Arbitration Provision (with the exception of the enforceability of the class action waiver clause provided in paragraph F(2)). "Dispute is to be given the broadest possible meaning that will be enforced. As used in this Provision, "Comcast" means Comcast Cable Communications, LLC., its officers, directors, employees and agents, and all entities using the brand name "Comcast", including your local cable company, its employees, authorized agents, and its parents, subsidiaries and affiliated companies. As used in this Provision, the term "Arbitration Provision" means all the terms of this Section 13.
> **c. Right to Opt Out.** IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY COMCAST IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT BY VISITING WWW.COMCAST.COM/ARBITRATIONOPTOUT, OR BY MAIL TO DEPARTMENT/ARBITRATION. YOUR WRITTEN NOTIFICATION TO COMCAST MUST INCLUDE YOUR NAME, ADDRESS AND COMCAST ACCOUNT NUMBER AS WELL AS A CLEAR

STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH COMCAST THROUGH ARBITRATION. YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH COMCAST OR DELIVERY OF SERVICES TO YOU BY COMCAST. IF YOU HAVE PREVIOUSLY NOTIFIED COMCAST OF YOUR DECISION TO OPT OUT OF ARBITRATION, YOU DO NOT NEED TO DO SO AGAIN.

(*See* Exhibit "B"; ECF No. 23-1 at 43-44). The 2011 and 2012 versions of the agreement mentions the same with slight variation in wording:

> **b. Definitions.** The term "Dispute" means any dispute, claim, or controversy between you and Comcast regarding any aspect of your relationship with Comcast, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence, or any other intentional tort), or Arbitration Provision (with the exception of the enforceability of the class action waiver clause provided in paragraph 13(f)(2)). "Dispute" is to be given the broadest possible meaning that will be enforced. As used in this Arbitration Provision, "Comcast" means Comcast and its parents, subsidiaries and affiliated companies and each of their respective officers, directors, employees and agents.
> **c. Right to Opt Out. IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION** IF YOU DO NOT WISH TO BE BOUND BY THIS ARBITRATION PROVISION, YOU MUST NOTIFY COMCAST IN WRITING WITHIN 30 DAYS OF THE DATE THAT YOU FIRST RECEIVE THIS AGREEMENT BY VISITING WWW.COMCAST.COM/ARBITRATIONOPTOUT, OR BY MAIL TO COMCAST 1701 JOHN F. KENNEDY BLVD., PHILADELPHIA, PA 19103-2838, ATTN: LEGAL DEPARTMENT/ARBITRATION. YOUR WRITTEN NOTIFICATION TO COMCAST MUST INCLUDE YOUR NAME, ADDRESS AND COMCAST ACCOUNT NUMBER AS WELL AS A CLEAR STATEMENT THAT YOU DO NOT WISH TO RESOLVE DISPUTES WITH COMCAST THROUGH ARBITRATION. YOUR DECISION TO OPT OUT OF THIS ARBITRATION PROVISION WILL HAVE NO ADVERSE EFFECT ON YOUR RELATIONSHIP WITH COMCAST OR THE DELIVERY OF SERVICES TO YOU BY COMCAST. IF YOU HAVE PREVIOUSLY NOTIFIED

> COMCAST OF YOUR DECISION TO OPT OUT OF
> ARBITRATION, YOU DO NOT NEED TO DO SO AGAIN.

(*See* ECF No. 23-1 Ex. C at 80; Ex. D at 116).

Paragraph "**f. Restrictions**," point 2, Defendant bars class actions in arbitration or litigation:

> ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS SIMILARLY SITUATED UNLESS THE STATUTE UNDER WHICH YOU ARE SUING PROVIDES OTHERWISE

In the 2008 and 2011 version the paragraph also states in point 3 that "ALL PARTIES WAIVE ANY CLAIM TO INDIRECT, CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR MULTIPLIED DAMAGES. (*Id.* at 45; *Id.* at 81.) The 2012 version states:

> ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE SHALL BE NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS ACTION OR CONSOLIDATED BASIS OR ON BASES INVOLVING CLAIMS BROUGHT IN A PURPORTED REPRESENTATIVE CAPACITY ON BEHALF OF THE GENERAL PUBLIC (SUCH AS A PRIVATE ATTORNEY GENERAL), OTHER SUBSCRIBERS, OR OTHER PERSONS.

In point 3 of the same paragraph, Defendant bars class actions in arbitration or litigation: "ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED." The paragraph also states that "ALL PARTIES WAIVE ANY CLAIM TO INDIRECT, CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR MULTIPLIED DAMAGES . . . ." (*Id.* at 45; *Id.* at 81). The 2012 version does not include point 3. (*Id.* at 117).

In paragraph "**j. Exclusion from Arbitration**," Defendant allows for individual small claims to be brought that are "NOT AGGREGATED WITH THE CLAIM OF ANY OTHER SUBSCRIBER AND WHOSE AMOUNT IN CONTROVERSY IS PROPERLY WITHIN THE JURISIDICTION OF A COURT WHICH IS LIMITED TO ADJUDICATING SMALL CLAIMS." (*Id.* at 46-47; *Id.* at 82; *Id.* at 117.)

The arbitration provision further provides for a convenient location, and a single neutral arbitrator with either party able to appeal a decision to a three-arbitrator panel. The provision also contains a severability clause. Defendant advances all fees and arbitration costs, but a customer must pay if he or she loses. (*Id.* at 45-47; *Id.* at 81-82; *Id.* at 117).

## **Legal Standard**

Motions to compel arbitration should be analyzed under a Rule 12(b)(6) standard when arbitrability is apparent on the face of the complaint and/or documents relied upon in the complaint. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 639 F. App'x 824, 826-27 (3d Cir. 2016) (*Guidotti II*). Where the complaint does not establish with clarity that the parties have agreed to arbitrate, or when the party opposing arbitration has come forward with reliable evidence that it did not intend to be bound by an arbitration agreement, a Rule 12(b)(6) standard is not appropriate because the motion cannot be resolved without consideration of evidence outside the pleadings, and, if necessary, further development of the factual record. *Id*. In such circumstances, the motion should be adjudicated under the Rule 56 standard for summary judgment. *Id.* at 827.

Beyond the parties' regarding the Subscriber Agreements in place at the time of the dispute, this motion presents no need to explore factual issues beyond the Complaint and the Exhibits attached. This Motion can be resolved without further development of the factual record, and thus the Court will apply the Rule 12(b)(6) standard of analysis to this Motion. To meet that standard,

the Defendant must show, through the facts alleged, that it is entitled to the relief sought. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

On a motion to compel arbitration, the Court must inquire: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). When performing this inquiry, courts apply "ordinary state-law principles that govern the formation of contracts," *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009) (quotations and citations omitted), and, "when determining whether [a] particular dispute falls within a valid arbitration agreement's scope, 'there is a presumption of arbitrability[:] an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Century Indem. Co*, 584 F.3d at 524 (quoting *AT&T Techs. v. Communs. Workers of Am.*, 475 U.S. 643, 650, 106 S. Ct. 1415, 89 L.Ed. 2d 648 (1986)).

The purpose of the Federal Arbitration Act ("FAA") is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Beery v. Quest Diagnostics*, 953 F.Supp.2d 531, 536-37 (D.N.J. 2013) (internal quotation and citation omitted). In order to achieve this end, the FAA provides that contracts containing arbitration clauses "shall be binding" and allows for a federal court to stay proceedings in any matter referable to arbitration. 9 U.S.C. §§ 2, 3, 4. Moreover, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Beery, supra*, 953 F.Supp.2d at 537. The Supreme Court confirmed that the FAA preempts state laws "that apply only to arbitration

9

or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

The Supreme Court has established two types of challenges to the validity of an arbitration provision pursuant to the "save upon" clause in § 2 of the FAA. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010). "One type challenges specifically the validity of the agreement to arbitrate," and "[t]he other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.,* the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid." *Buckeye Check Cashing, Inc., v. Cardegna,* 546 U.S. 440, 444 (2006). The Supreme Court has held that only first type of challenge can be successful in stripping an arbitration provision of its enforceability. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403–404 (1967); *Buckeye, supra,* at 444–446; *Preston v. Ferrer,* 552 U.S. 346, 353–354, (2008). If the contract is attacked as a whole, it must go to an arbitrator. *Preston, supra* at 353.

First, the Court must determine if the Subscription Agreement is in fact a valid agreement to arbitrate disputes between Defendant and Plaintiffs. When performing an inquiry into a motion to compel arbitration, the court applies "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 160 (3d Cir. 2009). Contracts in New Jersey are enforceable where there is "a bargained for exchange of promises or performance that may consist of an act, a forbearance, or the creation, modification, or destruction of a legal relation." *Martindale v. Sandvik*, 173 N.J. 76, 88 (2002).

The Supreme Court of New Jersey held that an arbitration provision in a consumer contract must state in a clear and unambiguous way that arbitration is a substitute for a consumer's right to pursue relief in a court of law. *Atalese v. U.S. Legal Servs. Grp.*, 99 A.3d 306, 316 (2014), *cert.*

*denied*, 135 S. Ct. 2804 (2015). In so holding, the court imposed no greater burden on an "arbitration agreement than on any other agreement waiving constitutional or statutory rights." *Id.* New Jersey contract law demands that any "wavier-of-rights provision must reflect that [the party] has agreed clearly and unambiguously" to its terms. *Leodori v. CIGNA Corp.*, 175 N.J. 293, 302 (2003), *cert. denied*, 540 U.S. 938 (2003); *see, e.g., Dixon v. Rutgers, the State Univ. of N.J.,* 110 N.J. 432, 460–61 (1988) (holding that collective bargaining agreement cannot deprive one of statutory rights to evidentiary materials in anti-discrimination case because "[u]nder New Jersey law[,] for a waiver of rights to be effective it must be plainly expressed"); *Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.,* 78 N.J. 122, 140 (1978) (explaining, in public-employment labor-relations context, that any waiver of statutory right to file grievances "must be clearly and unmistakably established").

## **ARGUMENTS**

Comcast seeks to compel this dispute to arbitration because Plaintiffs knowingly and voluntarily agreed to arbitration. (*See* Def.'s Suppl. Br. 6). Defendant argues that their arbitration clause passes muster under the *Atalese* standard and, even if it did not, that *Atalese* should not be followed because the decision is "flawed as a matter of common law and preempted as a matter of federal law." (*Id.* at 8).

Pointing to *Atalese*, Defendant notes that "no particular form of words is necessary" for an arbitration clause to be enforceable so long as the clause explains "that arbitration is a waiver of the right to bring suit in a judicial forum." (*Id.* at 6) (quoting *Atalese*, 99 A.3d at 313-314). Defendant finds its agreement distinguishable from the one in *Atalese* because Defendant's agreement states that disputes will be resolved in arbitration and that arbitration is well defined. (*Id*. at 8). The Subscriber Agreement defines arbitration under a bold heading "**13. BINDING**

11

**ARBITRATION**," and states at the end of the paragraph, "Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury." (*See* ECF No. 23-1 at 43-44, *Id.* at 80; *Id.* at 115).

The arbitration provision also contains "**c. Right to Opt Out.** IF YOU DO NOT WISH TO ARBITRATE DISPUTES, YOU MAY DECLINE TO HAVE YOUR DISPUTES WITH COMCAST ARBITRATED BY NOTIFYING COMCAST IN WRITING, WITHIN 30 DAYS. . . ." (Def.'s Br. 4). The paragraph furthers that a decision to opt out will have no adverse effect on the customer's relationship with the company. Defendant contends that the aforementioned clauses put Plaintiffs on notice as to the definition of arbitration and that the arbitration is a substitute for a right to bring suit in court.

Defendant further argues that *Atalese* should not be followed. (Def.'s Suppl. Br. 8). The Third Circuit reversed a trial court decision that denied a motion to compel arbitration because the plaintiff could not read English. *Morales v. Sun Constructors, Inc.*, 541 F.3d 218 (3d Cir. 2008). Defendant urges this Court to apply the same logic to the current Plaintiffs who did not understand the word "arbitration." (Def.'s Suppl. Br. 8).

Defendant also cites the FAA and claims that Plaintiffs are asking this Court to apply a heightened standard of enforceability to arbitration agreements. Indeed, Defendant claims that the Supreme Court of New Jersey erred in *Atalese* because the decision applies a heightened standard to arbitration agreements over other areas of contract law, which the Supreme Court of the United States has ruled against. *Concepcion*, 563 U.S. at 339.

Plaintiffs argue that the Defendant's arbitration clause fails to explain that arbitration is a substitute for the time-honored right to sue in court and, therefore, no valid agreement to arbitrate exists. (*See* Pl.'s Suppl. Br. 6). Plaintiffs claim the arbitration clause does not satisfy the "clear and

unambiguous" standard put forth in *Atalese* and *Leodori* for waiving access to the court system. The clause appears to give the customer an option to elect an arbitrator instead of suing in court, but does not make clear that it is a waiver of a constitutional right.

Plaintiffs emphasize the permissive language in the clause and the use of the word "may." (*See* Pl.'s Suppl. Br. 2). The opening clause states "you or Comcast may elect to arbitrate [a] Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury." Plaintiffs perceive this provision to be written as a choice and that a reasonable consumer, unaware of the difference between alternative dispute resolution and litigation, would not understand the repercussions of such an agreement. (*Id.* at 2).

Plaintiffs compare this clause with Comcast's current provision available on its website: "Any Dispute involving you and Comcast shall be resolved through individual arbitration. In arbitration, there is no judge or jury and there is less discovery and appellate review than in court." Plaintiffs argue that the current company provision is clear in describing that arbitration is a binding substitute for a right to sue in court, as opposed to the provisions in dispute. (*Id.* at 5).

Plaintiffs also compare Defendant's arbitration clause with the one found to be unenforceable by the Supreme Court of New Jersey in *Atalese* and find the two clauses similar. Both provisions are found in consumer contracts over twenty pages in length. In *Atalese*, the arbitration clause is part of a legal services contract for debt-adjustment, and reads, "In the event of any claim or dispute between Client and USLSG related to this Agreement or related to any performance of any services related to this Agreement, the claim or dispute shall be submitted to binding arbitration upon the request of either party." The *Atalese* clause does not describe what arbitration means. (*Id.* at 7). "The meaning of arbitration is not self-evident to the average

consumer, who will not know, 'without some explanatory comment[,] that arbitration is a substitute for the right to have one's claim adjudicated in a court of law.'" *Morgan v. Sanford Brown Inst.*, 137 A.3d 1168, 1180 (2016) (quoting *Atalese* 99 A.3d at 442).

Further, Plaintiffs point out the confusing nature of the small claims language. (*See* Pl.'s Br. 6; ECF No. 22). In paragraph "**j. Exclusions from Arbitration**," which allows for an individual claim "NOT AGGREGATED WITH THE CLAIM OF ANY OTHER SUBSCRIBER AND WHOSE AMOUNT IN CONTROVERSY IS PROPERLY WITHIN THE JURISIDICTION OF A COURT WHICH IS LIMITED TO ADJUDICATING SMALL CLAIMS."[3] (*See* ECF No. 23-1 at 43-44). Plaintiffs argue this exclusion serves to further confuse the consumer. (Tr. of Oral Arg. 7). By granting a claim in a certain court and excluding it from others, Defendant expects a reasonable consumer to understand the structure of small claims courts and regular courts, jurisdiction, exclusion, and arbitration, all at the time of attempting to complete a contract for wireless internet. (*See* Pl.'s Br. 6-7; ECF No. 22).

## **Analysis**

The Court finds the Plaintiffs' arguments unpersuasive. Plaintiffs do not deny that all the agreements were agreed to, and those agreements all contain valid arbitration provisions. Under *Atalese*, a contract must make clear that a consumer is waiving his or her constitutional right to sue in court when agreeing to arbitration. When read by a reasonable person, the arbitration provision is clear and unambiguous in its waiver of rights. The provision satisfies the *Atalese* requirement in defining what arbitration means, and goes on to describe the process in detail. The

---

[3] The 2011 and 2012 version include a slight wording variation that does not affect the overall meaning of the sentence. "NOT AGGREGATED WITH THE CLAIM OF ANY OTHER SUBSCRIBER AND WHOSE AMOUNT IN CONTROVERSY IS PROPERLY WITHIN THE JURISDICTION OF A COURT THAT IS LIMITED TO ADJUDICATING SMALL CLAIMS" (ECF No. 23-1 at 82; *Id.* at 117.)

14

agreement's description includes eleven explanatory paragraphs. The court in *Atalese* acknowledges that "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights." 99 A.3d at 444.

The Court does not elect to disregard *Atalese* as Defendant argues. Those concerns have been duly addressed in the case law. *Atalese* has been cited by the Third Circuit a number of times. *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283 (3d Cir. 2017); *James v. Global TelLink Corp.*, 852 F.3d 262 (3d Cir. 2017); *Noble v. Samsung Elecs. Am., Inc.*, No. 16-1903, 2017 WL 838269, at *1 (3d Cir. Mar. 3 2017); *Guidotti v. Legal Helpers Debt Resolution, LLC*, 639 F. App'x 824 (3d Cir. 2016). Rather, the Court finds that the arbitration provision satisfies the clear and unambiguous standard for a waiver of rights.

When comparing Defendant's provision with the one in *Atalese*, the Court finds that Defendant's provision is distinguishable. The provision in *Atalese* is only one paragraph, and never defines arbitration. Here, the provision adequately defines arbitration: "Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury." (*See* ECF No. 23-1 at 43-44; *Id.* at 80; *Id.* at 115). The provision begins with the subheading "**BINDING ARBITRATION**." After two introductory paragraphs, the "**c. Right to Opt Out**" paragraph provides for a reasonable avenue to decline arbitration as a form of dispute resolution. Plaintiffs do not dispute that they chose not to opt out. The provision is made of the following paragraphs detailing the terms of arbitration: a. Purpose; b. Definitions; c. Right to Opt Out; d. Initiation of Arbitration Proceeding/Selection of Arbitrator; e. Arbitration Procedures; f. Restrictions; g. Location of Arbitration; h. Payment of Arbitration Fees and Costs; i. Severability; j. Exclusions from Arbitration; k. Continuation. The actions of the parties and the provision as a whole, makes clear that the parties agreed to arbitrate.

Next, the Court inquires whether this dispute falls within the scope of the arbitration agreement. Plaintiffs do not make specific arguments as to the scope of the provision being insufficient to cover their claims against the Defendant. Under "**b. Definitions**," the provision provides that

> any dispute, claim or controversy between you and Comcast regarding any aspect of your relationship with Comcast that has accrued or may hereafter accrue, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, negligence or any other intentional tort), or any other legal or equitable theory. . . . Dispute is to be given the broadest possible meaning that will be enforced.

(*See* ECF No. 23-1 at 43-44; *Id.* at 80; *Id.* at 116). Plaintiffs' claims for breach of contract, bad faith and other tort claims fall under dispute as defined in the arbitration provision.

## Conclusion

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Litigation is granted.

### ORDER

This matter having come before the Court on Defendant's renewed motion to Compel Arbitration and Stay Litigation (ECF No. 31); and the Court having fully considered the submissions of the parties;

It is on this 23rd day of October, 2017;

**ORDERED** that Defendant's motion to Compel Arbitration and Stay Litigation is granted; and it is further

**ORDERED** that this case is dismissed without prejudice.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.